Monroe *v.* Delavan.

to it as authorizing laxity and vagueness; for that pleading compared with the one we are considering, or with those it is frequently invoked to sustain, is *both definite and certain.*

The form of statement is, to be sure, somewhat like that once used in what were called the common counts; but the facts are stated much more fully, and with reasonable definiteness and certainty. On the subject of the standard of definiteness and certainty required in pleading, that case decides nothing and is not an authority at all; and on the subject of the sufficiency of pleading in matter of substance, which is the only question raised there, it decides nothing new in principle.

[NEW YORK SPECIAL TERM, February 2, 1857. *Peabody*, Justice.]

---

JAMES MONROE, JOHN A. MONROE and JOSEPH BLUNT *vs.* E. C. DELAVAN, J. T. NORTON and B. TIBBITTS.

In 1847 T. obtained a judgment against B. and others, on a note given by them to D. for about $2800. That note, as alleged, was obtained from the makers by D., by fraudulent representations, which rendered the same void; and in order to prevent an inquiry into the consideration, D., together with N. who had some interest in the note, induced T. to allow the same to be prosecuted in his name, without his having any interest in such note or judgment. The defendants in that suit did not become aware of the fraud, and the want of interest on the part of T., until after the recovery of the judgment. In 1838 T. filed a creditor's bill upon the judgment. In his answer to that bill B. set up the said fraudulent representations of D. as a defense; and after a hearing of the parties the court allowed the defense, and made a decree dismissing the bill with costs. B. then brought this suit, to have the judgment canceled of record, and for a perpetual injunction, and M. and M. his assignees, under an assignment for the benefit of creditors, joined in the suit. *Held,* on demurrer to a complaint stating these facts, that the question of fraud, having been decided in the creditor's suit, was *res adjudicata* as between B. and D., that suit having been prosecuted for the benefit of D.; and that T., the nominal plaintiff, was also bound by the decree in that suit. *Held further,* that the claim on the judgment having been, by the decree in the creditor's suit, adjudged to be liable to the defense of fraud there set up, the defendants in this suit were bound to show cause why the judgment

Monroe *v.* Delavan.

should not be canceled. And that there had been no laches on the part of the plaintiffs in applying for relief.

*Held also* that the suit was properly brought by the plaintiffs; that B. himself might bring it, he being interested in having the judgment canceled; and that his assignees might bring it, as representing the assigned property, on the title to which the judgment was a cloud, and generally as representing the rights of other creditors of B. in the fund assigned. And that it was proper for B. and his assignees to unite as plaintiffs. Demurrer overruled, and judgment for plaintiffs.

APPEAL by the plaintiffs, from an order made at a special term, allowing a demurrer to the complaint, and ordering judgment for the defendants.

The complaint stated that, in 1847, B. Tibbitts, one of the above defendants, recovered a judgment in the supreme court against Richard R. Ward, Samuel Glover and Joseph Blunt, for $2819.12, and that on the 3d of April, 1848, he filed a creditor's bill to enforce the said judgment against the same parties. It also stated that the consideration of the said judgment was a promissory note, obtained by Edward C. Delavan from the same parties by fraudulent representations; and that in order to prevent an inquiry into the consideration, he and John T. Norton, who had some interest therein, induced Tibbitts to allow the same to be prosecuted in his name, without his having any interest in said note or judgment. It further alleged that the defendants did not become aware of the fraud and the want of interest on the part of Tibbitts until after the recovery of the judgment, and that when they did know those facts, the said Joseph set them up in his answer to the creditor's bill; and after hearing of both parties, a decree was made in the supreme court, February 4, 1854, dismissing the bill with costs; which decree stands unreversed. James Monroe and John A. Monroe joined in the present complaint, as assignees of real estate belonging to the said Joseph, on which said judgment was a lien, and the plaintiffs prayed that the judgment might be canceled of record, and for a perpetual injunction. To this complaint the defendants demurred generally.

Monroe *v.* Delavan.

*Wm. Curtis Noyes,* for the appellants.    I. If the defendant
Tibbitts should seek to enforce the original judgment, the facts
established by the decree in the suit heretofore brought to
enforce that judgment would be a good bar to his action.
(*Simpson* v. *Hart,* 1 *John. Ch. Rep.* 91.    *Manny* v. *Harris,*
2 *John.* 24.    *Kingsland* v. *Spalding,* 3 *Barb. Ch.* 341.    *Eth-
eridge* v. *Osborn,* 12 *Wend.* 399.    *Gardner* v. *Buckbee,* 3
*Cowen,* 120.    *Bouchard* v. *Dias,* 3 *Denio,* 238.    *Ehle* v. *Bing-
ham,* 7 *Barb.* 494.    *Holmes* v. *Remsen,* 7 *John. Ch.* 286.)

II. The complaint shows that the fraud came to the knowl-
edge of the defendants after the recovery of said judgment,
viz. in February, 1848, and equity will give relief in such case.
(*Lansing* v. *Eddy,* 1 *John. Ch.* 49.    *Foster* v. *Wood,* 6 *id.* 87.
*Bruen* v. *Hone,* 2 *Barb. S. C. Rep.* 586.    *Borden* v. *Fitch,*
15 *John.* 121.    *Reigal* v. *Wood,* 1 *John. Ch.* 402.    *Huggins*
v. *King,* 3 *Barb. S. C. Rep.* 616.)

III. There have been no laches ; as the very question in
issue in this action came up in a suit commenced in April,
1848, by Tibbitts against the defendants, which suit was not
decided until February, 1854, establishing the fraud.

IV. After that decision, Tibbitts and those he represents
are concluded on the questions brought in issue in that suit ;
and the plaintiffs now seek to remove the obstacle that the
judgment makes to the disposition of the real estate on which
it is a lien.

V. Any party having an interest may, upon proper grounds,
apply by bill in equity to set aside a judgment, or to obtain a
perpetual injunction against its enforcement.

VI. The judgment and decree in the former suit was upon
bill and answer, and not upon the plea, and the decree was
after a hearing of both parties.

VII. The judgment and decree against Tibbitts is also a
bar against Delavan and Norton.    (*Southgate* v. *Montgomery,*
1 *Paige,* 41.    *Gelston* v. *Hoyt,* 13 *John.* 561.    *Calkins* v.
*Allerton,* 3 *Barb.* 171.    *Rapelye* v. *Prince,* 4 *Hill,* 119.)

VIII. The judgment was a *cloud* upon the title of the as-

Monroe *v.* Delavan.

signees, embarrassing them in the execution of their duties as trustees, and requiring parol and *other extrinsic* evidence to show its invalidity. The parol and extrinsic evidence is : 1. That the note was given for the land ; 2. That the false representation was made ; 3. That Tibbitts did not own the note ; 4. As against Delavan, that he was the *real* owner ; 5. That the fraud was discovered *after* the recovery of the judgment. (*Van Doren* v. *Mayor of New York*, 9 *Paige*, 388. 3 *A. K. Marsh.* 338.)

IX. It was invalid, and did not constitute a legal claim against the funds in the hands of the plaintiffs, as such trustees, nor entitle Tibbitts to a dividend ; because, (1.) The note on which it was obtained was void for fraud and want of consideration, growing out of the false representation made in selling the property. (2 *Bailey*, 324. *Cooke*, 394.) (2.) By reason of the decree or judgment of the supreme court, adjudging that Tibbitts was not entitled to recover upon it, and that it formed no foundation for a creditor's bill.

X. The Monroes, as trustees for the benefit of creditors, represent them all, and may maintain this action to cancel the judgment and remove the cloud from their title ; it being, practically, a suit for directions to them in discharge of their duties as such trustees, which they cannot perform without such directions ; they having been notified by the other creditors not to pay the judgment. (*Hill on Trustees*, 542, 2*d ed. Pratt* v. *Adams*, 7 *Paige*, 615.)

*H. Harris*, for the defendants.

*By the Court*, Peabody, J. The plaintiffs in their complaint say, that in August, 1847, the defendant Tibbitts obtained a judgment against the plaintiff Blunt, and two others, on a note given by them to Delavan, for about $2800. That in April, 1848, Tibbitts filed a bill in chancery to enforce said judgment, to which Blunt set up as a defense that the note on which the judgment had been recovered was made and delivered to Delavan

Monroe *v.* Delavan.

to procure the release of Blunt from a contract he had made with Delavan, which he had been induced to make by fraudulent representations of said Delavan. The fraudulent representations were set out in the complaint, and it is also stated that said fraud was not discovered until after the judgment had been recovered. It is also stated that the judgment in fact belonged to said Delavan. That judgment in that second suit, brought to enforce the judgment recovered in the first, was entered for the defendant Blunt, in February, 1854, to the effect that the answer was true, and dismissing the complaint with costs; from which no appeal has been taken. The plaintiffs also say that Blunt, in July, 1848, made to the plaintiff James Monroe a general assignment of his property, for the benefit of creditors; and they demand, as relief, that the judgment against Blunt be canceled or opened, and that a perpetual injunction be granted against the collection of it, and other general relief. The complaint, after stating the fraud by which the defendant Blunt was entrapped, proceeds to state that the question of fraud on the part of Delavan has been decided in a suit, the substance of which is set forth; from which it appears that it has become *res adjudicata* between Blunt and Delavan. The suit in which it was decided was, to be sure, between Tibbitts and Blunt, but the court decided that it was prosecuted in the name of Tibbitts for the benefit of Delavan; and by rendering judgment for the defendant in that suit, for a cause which was matter of defense only between Blunt and Delavan, it is certain that they must have decided that the judgment, in the hands of Tibbitts, was subject to that matter of defense, which is all that is necessary for the plaintiff in this case. Tibbitts was plaintiff in the suit in which the judgment was recovered. He was also plaintiff in the suit brought to enforce it; and whether Delavan was the real plaintiff in interest or not, he, as well as the nominal plaintiff, was bound by the adjudication there had, not only as to the result of that suit, but also as an adjudication of the rights of the owner of the judgment, whether he or Tibbitts were that owner,

Monroe *v.* Delavan.

which concludes him not only in that suit but elsewhere. (*Southgate* v. *Montgomery,* 1 *Paige,* 41. *Calkins* v. *Allerton,* 3 *Barb.* 171. 7 *id.* 494. 4 *Hill,* 119.) The defense to the claim on the note is adjudged to be good and sufficient in law, and a court of equity in a direct proceeding by the plaintiff on the judgment, against the judgment debtor, having adjudged to that effect has dismissed with costs, on that ground, a bill to enforce it. This decision involved the decision of several minor questions : (1st.) That the matter set up as constituting fraud was sufficient in law to have defeated the recovery ; (2d.) That the fraudulent representations were made ; (3d.) That the evidence was discovered after the judgment against Blunt was recovered, and too late to be interposed as a defense in that suit ; (4th.) That no unreasonable delay had been suffered by Blunt, after the discovery of the fraud, in availing himself of it ; and (5th.) That the relations between Tibbitts and Delavan were such that the fraud was available to defeat the claim when made by Tibbitts, as it would have been if it had been made by Delavan. Whether this last point was so found on the ground that the suit was prosecuted by Delavan in the name of Tibbitts, or on some other ground, is not important. It is sufficient that the claim on the judgment was adjudged to be liable to this defense, in the hands of Tibbitts. With those matters judicially ascertained we may look to the defendants to show cause why the judgment should not be canceled. Their demurrer is general, that the complaint "does not state facts sufficient to constitute a cause of action" against them, and they have not indicated by points what are the grounds on which they rely to sustain it. Nor is there before us any reason by way of opinion or otherwise for the decision in the court below, allowing the demurrer. The length of time that was suffered to elapse after the discovery of the fraud, before the attempt by Blunt to avail himself of it, to accomplish the end sought by this suit, to wit, the cancellation and extinguishment of the judgment, may be a sufficient ground in their estimation, and it

would be in ours, perhaps, but for the fact that he did, immediately on the discovery of it, commence to assert it legally, to defeat the claim on the judgment. The suit on the judgment was commenced in April, 1848, and in that suit this new matter was set up as a defense. That defense was litigated till the 4th of February, 1854. The existence of the facts, and their sufficiency in law to defeat the claim, were then being litigated throughout that time, and those questions were in doubt until the decision in that case. The question arises whether, under those circumstances, laches can be imputed to Blunt in omitting to bring this suit until after the decision in that. The whole matter of law and fact was then in issue between the same parties in that suit. To have commenced this action would have done no good, apparently, and would have increased litigation and expense. The result in the suit first decided would have concluded the parties in the other, and rendered the whole question *res adjudicata.* The defendants here cannot suffer any damage which might otherwise follow from the lapse of time, such as the loss and fading out of evidence: for the question was immediately litigated between the parties, and the evidence could have been, and so far as we can see was, immediately called into the case, and not only put in a condition to be preserved, but the result of it was actually obtained by an adjudication which is now entirely available here; and whatever it might have been, would be available to either party conclusively in this suit, or any other brought for the same purpose. Under these circumstances, the defendants cannot complain of delay in commencing this suit. Indeed, it is very doubtful if a court of equity would have allowed the two suits to proceed together, the questions to be tried in the two being the same, and between the same parties. It would probably have restrained the proceedings in one until the decision in the other should have been attained; and if a suit had been brought by Mr. Blunt, that would probably have been the one to be restrained; certainly it would if it had been commenced after the other, which it might have

been, without the least danger that the plaintiff could suffer on the ground of laches, as to it. This suit is properly brought by the plaintiffs. Blunt himself might bring it. He is interested in having the judgment canceled. The Monroes might, if not as representing the rights of Blunt, certainly as representing the property on the title to which the judgment was a cloud, and generally as representing the rights of other creditors of Blunt to the fund assigned, between whom and the owner of the judgment in question that fund was to be distributed, and the shares of the *cestuis que trust* whose interests they were bound to protect be thereby diminished ; and they may unite as plaintiffs, I think, at any rate, without exposing themselves to harm from a demurrer. The judgment below should be reversed, and judgment entered for the plaintiffs in this suit, with costs.

[NEW YORK GENERAL TERM, November 2, 1857. *Mitchell, Clerke* and *Peabody*, Justices.]