DENNIS BURNS, RESPONDENT, *v.* HENRY WINCHELL, APPELLANT.

*Tenants in common of crops — what acts establish a conversion of the interest of one tenant by a co-tenant — when an owner is not prevented from maintaining an action for the conversion of his interest by the fact that a chattel mortgage given by him thereon is over-due.*

On June 1, 1882, the parties to this action entered into an agreement by which the plaintiff Burns agreed to plant about five acres of tobacco on land of the

defendant, and cut, hang and pack the same in boxes and furnish teams to draw the same away, in consideration of which he was to have one half of the tobacco, it being agreed that in case the plaintiff failed in doing these things he should forfeit all his interest in the tobacco. After the plaintiff had stripped and sorted the tobacco ready for market and locked it up in a building the defend-ant pried off the plaintiff's lock and put on another so that the plaintiff, on coming to the building with cases to put the tobacco in for the purpose of drawing it to market, could not get into the building. The defendant refused to let the plaintiff have the tobacco, or any part thereof, and stated that he had not done his work properly, and for the first time found fault with the manner in which the tobacco had been harvested and cured. He refused to case or divide the tobacco, and denied that the plaintiff had any tobacco there. *Held,* that the plaintiff and defendant were tenants in common of the tobacco, and that the facts stated were sufficient to establish a demand and refusal which rendered the defendant liable for a conversion of the plaintiff's interest.

That the fact that the plaintiff had, in December, 1882, executed a mortgage, due one day from date, upon his undivided one-half interest in the tobacco, did not prevent him from maintaining the action as it did not appear that the mortgagee had ever demanded the money or taken possession of the property.

APPEAL by the defendant from a judgment entered upon a verdict rendered in the County Court of Onondaga county, and also from an order denying a motion for a new trial made upon the judge's minutes.

Upon a former appeal to the General Term a new trial was granted, holding "that plaintiff's evidence should have been con-fined to the market value at the time of the conversion.

*Hoyt, Beach & Hine,* for the appellant.

*Terry & Terry,* for the respondent.

HARDIN, P. J.:

On the first day of June, 1882, the parties entered into an agreement containing the following stipulations, viz: "That the said Burns agrees to plant about five acres of tobacco on the land of said Henry Winchell, in the town of Camillus, Onondaga county; said Burns is to do all the manual labor on said land, load all the manure and spread the same, and what hen manure he, Winchell, has got, and the manure of two backhouses, and mix the same with leached ashes, and put the compost in the tobacco hills. He, Burns, is to do all the work on said tobacco, cut and hang and sort and pack it in boxes, and furnish all the plants, and find one-half of the lath for hanging, and one-half of the boxes. Said

Burns agrees to do this work in a good and workmanlike manner, and to do the same in season; when said Burns fails in doing the same he forfeits all he has done and it shall be lawful for said Winchell to go and take charge of the same. Said Winchell also agrees to furnish all the team work that is required on said tobacco lot, and draw the tobacco away, and to furnish one-half of the lath and one-half of the boxes. And in consideration of the faithful performance of such labor said Burns is to have one-half of said tobacco." Undoubtedly under the agreement the parties became tenants in common of the crop of tobacco. (*Caswell* v. *Districh*, 15 Wend., 379; *Harris* v. *Frink*, 49 N. Y., 24.) In the spring of 1883, the plaintiff stripped and sorted the tobacco ready for market and kept it locked up in the building where he sorted it. About the 20th of June, 1883, the plaintiff went to the building with his cases and put the tobacco in for the purpose of drawing it to market. He then found the defendant had pried off plaintiff's lock from the door and put on another so that the plaintiff could not get into the building, and the defendant refused to let the plaintiff have the tobacco or any part thereof, stating to the plaintiff that he had no tobacco there, and also stating to the plaintiff that he had not done his work properly, and for the first time found fault with the manner in which the tobacco had been harvested and cured. Plaintiff testified, viz: "The last time I went back there I asked Winchell for my half of the tobacco there. He said I had no tobacco there at all. He would not allow me to go in at all. I asked him to case the tobacco or divide it with me; he said I hadn't no tobacco there at all. I said well, I will go and see whether I can get it or not"

We think the evidence entirely sufficient to establish a demand and refusal, and that the conduct of the defendant was such that he rendered himself liable for conversion of plaintiff's interest in the tobacco at the time of the demand and refusal. (*Lobdell* v. *Stowell*, 51 N. Y., 70.) The refusal of the defendant to allow the plaintiff to obtain possession of the property may be regarded as "waiving the performance of any further acts" by the plaintiff as tenant in common. (*Fobes* v. *Shattuck*, 22 Barb., 568.) In *Stall* v. *Wilbur* (77 N. Y., 158), EARL, J., uses language applicable to the question made in respect to the demand under consideration. He says, viz.:

" As to such property, separable in respect to quantity and quality by weight or measure, each tenant in common may demand of his co-tenant having possession of the whole his share, and upon refusal or a conversion by such co-tenant may sue in his own name, without joining all the other co-tenants." (*Channon* v. *Lusk*, 2 Lans., 211 ; *Lobdell* v. *Stowell*, 37 How., 88 ; S. C., 51 N. Y., 70.)

The doctrine just cited was followed in *Thomas* v. *Williams* (32 Hun, 260), where SMITH, P. J., speaking for this court, said, viz. : " The parties were owners in common of the grain. It has been held in this State that owners in common of grain or other personal property, in its nature separable in respect to quantity and quality by weight or measure (as the grain in question here was shown to be), may sever their portions of the common bulk at will ; and where one of them, having the entire property in his possession, appropriates the whole to his own use, and refuses, on reasonable demand, to let the other have his portion of it, he is liable for a conversion." We hold the evidence upon the trial in the case before us was sufficient to warrant the jury in finding a demand and refusal, and that the defendant converted the whole of the plaintiff's interest in the crop of tobacco.

It appeared upon the trial that the plaintiff, on the 4th day of December, 1882, executed to John C. Monroe a chattel mortgage to secure sixty-five dollars due " in one day from date, with use," upon " the undivided one-half of five acres of tobacco, raised in 1882, which is now on the poles and in the barn on the premises now occupied by Henry Winchell, in the town of Camillus, and now remaining and being in his possession in said town."

Because of the execution of that mortgage the defendant upon the trial insisted that the plaintiff had no title or interest in the tobacco at the time of the demand and refusal. It appeared in the evidence that the mortgagee had never demanded the money on his mortgage, nor taken possession of the mortgaged property. Notwithstanding the execution of that mortgage by the plaintiff, he owned the equity of redemption in the property, and had such an interest in it as against the defendant that he had a perfect right to the possession thereof at the time of the demand and refusal. (*Marsden* v. *Cornell*, 62 N. Y., 215 ; *Green* v. *Clarke*, 12 id., 343.)

Giving the chattel mortgage to Monroe in no manner enhanced the defendant's rights in the property, and defendant failed to connect himself with the title or interest of Monroe in the property, except by a subsequent arrangement made after the demand and refusal, to the effect that when the property was sold the mortgage would be paid out of the interest of the plaintiff in the proceeds. Such payment appears to have been made, and the recovery had in this case is only for such sum as is equivalent to the proceeds of plaintiff's half after paying therefrom the mortgage in question. Monroe had entered into an arrangement that he would wait for the pay on his mortgage until Burns sold the tobacco, and after that arrangement Burns had bestowed considerable labor upon the property covered by the mortgage, during the winter and in the spring, in stripping, sorting and resorting the tobacco. In effect, there was an understanding between the plaintiff and the mortgagee that the mortgage should not be enforced until the tobacco was turned into money and the proceeds could be applied thereon. Under such circumstances we are of the opinion that the plaintiff had an interest in the property, and as against the defendant the right to the possession thereof, and that the defendant's conversion was wrongful. (*Bowen* v. *Fenner*, 40 Barb., 383.)

It appears by the evidence in the case that the defendant sold the whole crop as his own, and in his answer and upon the trial he sought to assert a claim to the whole crop and insisted the plaintiff had forfeited his right to any part thereof under the contract. According to the evidence of Monroe the defendant never acquired any right to the property in virtue of the mortgage. He did not take an assignment of the mortgage. He had notice before he sold the tobacco to Skinner that Monroe held the mortgage. All the parties acted upon the assumption that when the property was sold and turned into money that out of Burns' half of the proceeds the mortgage should be paid. Such payment was made and, as before remarked, the verdict in this case is only equivalent to the balance of the proceeds.

In the course of the charge the trial judge submitted to the jury to find whether the plaintiff had failed to perform his duty as required by the agreement in respect to the tobacco, and whether the failure was such as was contemplated by the agreement under

which the defendant would be warranted in taking possession of the tobacco in question. The verdict of the jury is adverse to the defendant on that question. The trial judge observed, viz.: "It is a question of fact; it is a question in determining which you will have to review all of the evidence relating to the way this tobacco was cultivated and cured and handled down to that time. The defendant was protected by the agreement, by the insertion of the clause which allowed him, whenever there was a failure, to take possession of the property; and before you find that he had a right to take possession of the property, at the stage when it is said that he did take possession and convert it, you must find that Burns himself had failed in his duty."

We think that the question was presented sufficiently favorable for the defendant to the jury. Their verdict is adverse to the defendant upon that question as well as upon all other questions of fact in the case. We see no error in the progress of the trial which should lead us to disturb the verdict.

The judgment and order should be affirmed, with costs.

BOARDMAN and FOLLETT, JJ., concurred.

Judgment and order affirmed, with costs.